IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**J. DAVID MOORE**,

    Plaintiff,                                                No. CV 09-1095-MO

    v.                                                    OPINION AND ORDER

**INTEGRATED TEST ARIZONA CORP., a foreign domestic business corporation**,

    Defendant.

    **MOSMAN, J.**,

This is a wage and hour dispute between David Moore and his former employer, Integrated Test Arizona. The parties have made cross motions to enforce different settlement agreements (##106, 112), and Mr. Moore has moved to hold the defendant in contempt (#116). I find that neither of the proposed settlement agreements is enforceable, and that the defendant is not in contempt.

## BACKGROUND

There are four parties to the settlement negotiations, but only two of them are parties to this lawsuit. Mr. Moore and Integrated Test Arizona are parties to the lawsuit. Integrated Test Corporation and Dana Freeman, the president of Integrated Test Arizona, are part of the negotiations, but are not parties to this suit. Plaintiff's counsel represents Mr. Moore. Defense counsel represents the other three parties in the settlement negotiation, and represents Integrated Test Arizona in the lawsuit.

1 – OPINION AND ORDER

The parties reached an agreement as to several material terms at a settlement conference. Following this conference, defense counsel emailed a draft settlement agreement to plaintiff's counsel that was roughly five pages long. The parties still had not agreed upon the "employee contact issue," that is, whether Mr. Moore would be able to stay in touch with former coworkers.

On October 17, 2010, plaintiff's counsel sent its first response draft of the agreement back to defense counsel. It made changes to the employee contact provisions, but also modified the definition of "Employer" to include (1) Integrated Test Corporation and (2) the defendant's president, Ms. Freeman, as an individual. This expanded definition has the effect of requiring these two parties to make the settlement payment if the defendant declares bankruptcy. Plaintiff's counsel did not tell the defendant about any of the changes or offer a blackline showing the changes. Following this change, multiple versions of the agreement, which included the expanded definition, were passed back and forth while other provisions were negotiated.

Eventually settlement negotiations stalled. In a telephone status conference on November 16, 2010, I ordered the parties to exchange their final offers and, if those offers failed, to prepare for trial (#105). Plaintiff's counsel sent defense counsel a draft of the agreement with a cover letter explaining changes to various provisions, but did not mention the change to the definition of employer made the month before.

Defense counsel used plaintiff's offer as a starting point, made a few modifications, and returned it as their final counteroffer. On November 23, 2010, defense counsel emailed plaintiff's counsel a revised offer ("November 23rd Agreement"). Both drafts included plaintiff's expanded definition of "Employer".

The plaintiff signed and returned this revised agreement that same evening. Defense counsel accepted the agreement by email saying, "My client will sign the agreement." Decl. of

Cari Waters, (#114) Ex. 5, at 1. A week later Ms. Freeman, the defendant company's president, signed the signature line for Ms. Freeman as an individual, but did not sign the signature line for the defendant company or for the affiliate company.

The following week, the defendant's in-house counsel noticed the expansive definition of employer. On January 4, 2011, defense counsel sent a revised draft of the agreement ("January 4th Draft") to plaintiff that was identical to the November 23rd Agreement, except that the definition of "Employer" included only the defendant, rather than the affiliate and Ms. Freeman as an individual.

Plaintiff refused to sign the January 4th Draft, and the next day defense counsel moved for this court to force plaintiff to sign (#106). In the alternative, defense counsel asks that I reform the November 23rd Agreement to match the material terms reached in a prior settlement conference. Defense counsel also asks for attorney fees for the costs of bringing this motion.

Plaintiff has filed a motion to enforce the November 23rd Agreement, and for attorney fees for the time spent resolving this portion of the case (#112). Plaintiff's counsel also brings a Motion to Show Cause As to Why Defendant Should Not Be Held in Contempt (#116), arguing that defense counsel violated my order to submit their final offer and violated my prior order for sanctions.

## DISCUSSION

The central issue in these motions is whether the defendant can be bound by a term in an offer that it did not realize was in the offer because it never ran a blackline to show changes to the drafts. I will discuss the potential agreements in reverse chronological order, and conclude by discussing the contempt motion.

I.   **Basic Contract Principles**

"A settlement is a contract. Whether a contract exists is a question of law." *In re Marriage of Baldwin*, 168 P.3d 1233, 1235 (Or. Ct. App. 2007) (internal citations omitted). "To constitute a contract . . . there must be an offer and an acceptance." *Klimek v. Perisich*, 371 P.2d 956, 960 (Or. 1962). "Oregon subscribes to an objective theory of contracts, which means that whether the parties entered into a contract does not depend on the parties having the same subjective understanding of the agreement. Rather, it depends on whether the parties agreed to the same express terms of the contract." *Baldwin*, 168 P.3d at 1235 (internal citations omitted).

II.   **Enforcing the January 4th Draft**

The January 4th Draft is identical to the November 23rd Agreement, except for the definition of "Employer." Defense counsel moves to enforce it because it reflects the subjective understanding of the parties. This argument fails for two reasons.

First, defense counsel has not established that plaintiff's counsel ever accepted this agreement. In fact, the only draft that did not contain the expansive definition of "Employer" was the very first draft created by the defense. Every draft from that point on has included this definition. Because defense counsel offers no evidence of acceptance, this argument fails.

Second, defense counsel argues that it should be enforced because it reflects the "meeting of the minds" of the parties. However, whether the parties entered into a contract does not depend on a subjective "meeting of the minds." Instead, it turns on "whether the parties agreed to the same express terms of the contract." *Id.* Here the parties did not agree to the same express terms contained in the January 4th Draft, so the January 4th Draft is unenforceable.

**III.     Enforcement of the November 23rd Agreement**

Plaintiff asks that I enforce the November 23rd Agreement. For the November 23rd Agreement to be binding, there must be an offer and an acceptance. The November 23rd Agreement was sent from the defendant as their final offer under the court's order. The plaintiff accepted the November 23rd Agreement in an email confirmation.[1] The only question is whether defense counsel made the offer on behalf of all of his clients or only on behalf of Integrated Test Arizona.

The November 23rd Agreement was drafted to bind three parties that are represented by defense counsel: Integrated Test Arizona, Integrated Test Corp., and Dana Freeman. Only Integrated Test Arizona is a party to this action. The only question that remains is whether defense counsel had authority to agree to contract on behalf of each of the parties he represented at the negotiation.

Defense counsel could accept the contract on behalf of these parties only if he had actual or apparent authority. Plaintiff's counsel accepted on behalf of the plaintiff with actual authority, so the plaintiff is bound. Defense counsel had actual authority to bind Integrated Test Arizona, so it is bound. Dana Freeman signed the agreement in her personal capacity, so she is bound. However, defense counsel lacked actual authority to bind Integrated Test Corp. So the only question is whether defense counsel had apparent authority to bind Integrated Test Corp.

> "Apparent authority to do an act (settle) is created when the principal's conduct, reasonably interpreted, causes a third person mistakenly to believe that the agent has actual authority. The practical difference between actual and apparent settlement authority is that, while in both instances the client is bound, in the latter case he may seek a remedy against his attorney for breach of contract." *Johnson v. Tesky*, 643 P.2d 1344, 1347 (Or. Ct. App. 1982).

---

[1] Plaintiff's counsel worded the acceptance in such a way that it could be read as making a counter-offer with the same terms. If that were the case, defense counsel accepted that offer by responding, "My client will sign the agreement."

5 – OPINION AND ORDER

In Oregon "an attorney does not have authority arising merely from his employment to settle his client's claim. Similarly, authority to negotiate with the opposing party does not, by itself, imply the power to reach a binding agreement; the client's express authorization is necessary." *Johnson*, 643 P.2d at 1347. This limitation is meant to "encourage attorneys negotiating settlements to confirm their, or their opponent's, actual extent of authority to bind their respective clients." *Id.* at 1347 n.2. Because an attorney cannot ethically contact the other attorney's client, "all [an attorney] could have done was to ask the other attorney what his authority was. If the other attorney claimed authority that it turned out he did not have, the client would be off the hook and her attorney would be on it." *Id.* at 1347. In other words, an attorney who has authority to negotiate has authority to disclose whether he has authority to bind the principal. So statements by the attorney may create apparent authority.

The plaintiff asks that I find that defense counsel had apparent authority to bind Integrated Test Corp., based solely on the act of negotiation and the presentation of the final offer on behalf of Integrated Test Arizona. Because there is no evidence that defense counsel had authority to accept or make an offer on behalf of Integrated Test Corporation, Integrated Test Corporation is not bound by the agreement.

At oral argument plaintiff's counsel asked that I enforce the agreement against Integrated Test Arizona and Dana Freeman, arguing that joining Integrated Test Corporation is not a material term of the contract. If there is disagreement about a material term, "then there is no contract." *Baldwin*, 168 P.3d at 1236. "A term is 'material' to an enforceable agreement when it goes to the substance of the contract and, if breached, defeats the object of the parties in entering into the agreement." *Id.* I find that the issue of who will pay the settlement amount goes to the substance of the contract, so there is no contract.

6 – OPINION AND ORDER

IV.     **Enforcing the Material Terms of the Settlement Conference**

Defense counsel asks that I reform the November 23rd Agreement to match the material terms agreed upon at the settlement conference, which was held before plaintiff's counsel expanded the definition of "Employer". Defense counsel argues that the material terms decided at the settlement conference more accurately reflect the "meeting of the minds" of the parties.

To be entitled to reformation, the defendant must prove by clear and convincing evidence:

> "(1) that there was an antecedent agreement to which the contract can be reformed; (2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and (3) that the party seeking reformation was not guilty of gross negligence." *Pioneer Res., LLC v. D.R. Johnson Lumber Co.*, 68 P.3d 233, 246 (Or. 2003).

The parties do not argue that there was a signed agreement at the settlement conference; however, Oregon law allows the enforcement of agreements that have not yet been formalized in writing. "When parties agree on the essential terms of a contract and there is nothing left for future negotiations, the fact that they also intended there to be a future writing that expresses their agreement more formally does not affect the immediately binding nature of the agreement." *Hughes v. Misar*, 76 P.3d 111, 115 (Or. Ct. App. 2003). Therefore, the parties may be bound by the settlement conference terms if "there [was] nothing left for future negotiations."

The terms discussed at the settlement conference are not enforceable because there was still room for future negotiations. A month after that settlement conference, I was asked to intervene because the negotiations had completely stalled over terms that were never finalized. In addition, defense counsel conceded the material terms were not finalized in an email to plaintiff's counsel: "We have reached agreement on the basic terms of the settlement, with the

7 – OPINION AND ORDER

exception of the employee contact issue. However, I also want to make clear that the employee contact issue is a material term of the agreement." Decl. of Cari Waters (#115) Ex. 3.

In light of the continued negotiations after the settlement conference and defense counsel's concession, the defendant has not shown by clear and convincing evidence that the parties agreed to all material terms. Because the defendant has failed to establish the first element required for reformation, I do not need to address whether failing to send a blackline constitutes inequitable conduct or whether making an offer without knowing what it contains constitutes gross negligence.

### V.        Motion to Show Cause as To Why Defendant Should Not Be Held In Contempt

Plaintiffs have moved that I hold defendant in contempt for: (1) failing to submit a final offer as required by my order on November 17th; (2) failing to pay the sanctions awarded September 8, 2010 (#96).

#### A.        *Sanctions for Failing to Submit a Final Offer*

Defense counsel argues that it should not be subject to sanctions because it complied with my order to submit its final offer, but it was fraudulently induced to include an unintentional provision in that offer. I reject defense counsel's argument; my order to make a final offer includes the order to know what is in that final offer.

However, as stated above, I find that Integrated Test Arizona did submit its final offer. The contract was never entered into because Integrated Test Corporation did not make or accept any offer. Because Integrated Test Corporation is not a party to this suit, it was not bound by my order to submit a final offer.

B.  *Sanctions for Failing to Pay Past Sanction Awards*

Plaintiff also asks that I impose sanctions for defendant's failure to pay the sanctions imposed on September 8, 2010. Plaintiff has offered no evidence that the defendant does not intend to pay these sanctions, and I never set a date as to when they must pay the sanctions, so I decline to impose additional sanctions at this time.

## CONCLUSION

I DENY Defendant's Motion to Enforce Settlement (#106). I DENY Plaintiff's Motion to Enforce Settlement (#112). I DENY Plaintiff's Motion for Order to Show Cause As to Why Defendant Should Not Be Held In Contempt (#116).

IT IS SO ORDERED.

DATED this __21st__ day of March, 2011.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

9 – OPINION AND ORDER